UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PORTLAND ENGINEERING, INC., an Oregon corporation, and THOMPSON DUKE INDUSTRIAL, LLC, and Oregon limited liability company,<br><br>                Plaintiffs,<br>    v.<br><br>ATG PHARMA INC., a Canadian corporation,<br><br>                Defendant, | Case No. 3:19-cv-02010-AC<br><br>OPINION AND ORDER |

ATG PHARMA INC., a Canadian corporation,

                Counter Claimant,

    v.

PORTLAND ENGINEERING, INC., an Oregon corporation, and THOMPSON DUKE INDUSTRIAL, LLC, and Oregon limited liability company,

                Counter Defendants.

Page 1 – OPINION AND ORDER

ACOSTA, Magistrate Judge:

Plaintiffs Portland Engineering Inc. ("PEI") and Thompson Duke Industrial ("TDI") (collectively "Plaintiffs") bring action against Defendant ATG Pharma Inc. ("ATG") alleging infringement of U.S. Patent No. 10,440,989 (the "'989 patent"). Presently before the court are Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 48) and ATG's Motion for Judgment on the Pleadings (ECF No. 47). For the following reasons, Plaintiffs' motion is granted and ATG's motion is denied.

## Background

Plaintiffs manufacture and sell various machinery and hardware related to the manufacture of cannabis products. (Compl. ¶ 3.) PEI has expertise in the packaging and food and beverage industry, process automation, and hydrolics or flow of liquids. (*Id.* ¶ 9.) At issue in this case is a patented vaporizer cartridge filling machine – an automated machine used for filling cartridges for use in vaporizer ("vape") pens. (*Id.*). PEI developed an apparatus for automated filling of vape cartridges that allowed for a high degree of precision and control over the process. (*Id.* ¶¶ 9-10.) PEI filed a patent application on November 1, 2016, and the '989 patent issued on October 15, 2019. (*Id.* ¶ 10.) The '989 patent contains forty-eight claims, with seven independent claims and forty-one dependent claims. (*Id.*, Ex. A.)

In November 2018, Michael J. Hogan, TDI Manager and co-inventor of patent '989, attended an MJBizcon convention in Las Vegas, Nevada. (Compl. ¶ 12.) At the MJBizcon convention, Hogan found ATG Pharma displaying a vaporizer filling machine, RoboCAP RL-200, that appeared to embody the claimed invention and included components that were direct copies of Plaintiffs' patented apparatus. (*Id.* ¶ 12.) At the MJBizcon convention, the components copied by ATG also were displayed at a booth by a vendor named Greentank Technologies

("Greentank"), a Canadian company that sells vape hardware. (*Id.*) Greentank advertises that it is "now partnered with ATG Pharma to supply retailers with cannabis oil filling machines that perfectly match our vape products." (*Id.*, & Ex. B.)

After the MJBizcon convention, Hogan contacted Dustin Koffler, the Founder and CEO of Greentank, and explained that the ATG product displayed in its booth appeared to have been reverse engineered from PEI's apparatus, and informed Koffler that PEI had filed a patent application. (*Id.* ¶ 13.) Koffler disavowed knowledge of the infringing product and directed Hogan to contact Mr. Michael Lio, ATG's CEO. (*Id.*) On December 11, 2018, Mr. Lio sent Hogan an email acknowledging that he had been advised that ATG's design potentially infringed Plaintiffs' apparatus, and he requested a copy of the patent application. (*Id.* ¶ 13.) Plaintiffs contend that ATG's RoboCAP products, the RoboCAP RL-200 and RoboCAP RL-300 (the "Accused Products") are infringing claim 7 of the '989 patent.

On December 10, 2019, Plaintiffs filed their Complaint alleging ATG infringed "one or more claims" in the '989 patent. (Compl., ECF No. 1.) Plaintiffs specifically pleaded infringement of claim 7. (*Id.* ¶ 15.) On February 7, 2020, ATG filed its Answer, Defenses and Counterclaims in which it contended claim 7 of the '989 patent is invalid. (Answer, ECF No. 19.) On February 20, 2020, the court conducted a Rule 16 conference by telephone, at which it set several deadlines:

> (1) Initial disclosures to be served and conferral on Alternate Dispute Resolution by 4/3/2020; (2) Joint ESI Report and Protective Order due by 3/27/2020; (3) Joint Alternate Dispute Resolution Report is due by 6/5/2020; (4) Amend pleadings and add parties by 6/5/2020; (5) Exchange Proposed Terms for Construction by 5/29/2020; (6) Exchange Preliminary Claim Constructions and Evidence by 6/19/2020; (7) File Opening Claim Construction Briefs by 7/17/2020; (8) File Responsive Claim Construction Briefs by 8/7/2020; (9) Claims Construction Hearing is SET for Thursday, September 10, 2020 at 9:00 AM in Portland Courtroom 11B before Judge Acosta; (10) Fact Discovery is to be completed by

Page 3 – OPINION AND ORDER

11/20/2020; (11) Expert Reports on Issues on which Party Bears Burden of Proof to be served by 1/22/2021; (12) Expert Reports on Issues on which Opposing Party Bears Burden of Proof to be served by 2/26/2021; (13) Expert Discovery to be completed by 3/26/2021; (14) Dispositive and Daubert Motions are due by 5/21/2021; (15) Final pretrial conference, filings and trial DEFERRED until after rulings made on Dispositive and Daubert motions; (16) The Court requests the parties notify the Court within 10 days as to whether they consent to magistrate.

(Minutes of Proceedings, ECF No. 27.)

On March 30, 2020, ATG filed a First Amended Answer, Defenses and Counterclaims. (Am. Answer, ECF No. 33.) ATG's invalidity counterclaim asserts claim 7 is invalid as being anticipated by numerous commercially available piston volumetric filler machines with heated hoppers. (*Id.* ¶ 35.) ATG also seeks declaratory judgment of invalidity, non-infringement, and unenforceability of patent '989.

In early 2020, Hogan was in communication with Valens Agritech ("Valens"), a cannabis company in British Columbia.[1] (Decl. Casey Kniser ("Kniser Decl.") Supp. Mot. Modify ¶ 4, attached as Ex. B, ECF No. 48-1.) Valens informed Hogan that he possessed a RoboCAP apparatus; in early May 2020, Valens provided an "estimate" for the apparatus ("Valens Estimate"). (*Id.* ¶ 5.) The Valens Estimate came from Advanced Integrated Robotics ("AIR"), not ATG, which prompted Plaintiffs to further inquire. (*Id.* ¶¶ 5-6.) On May 8, 2020, Plaintiffs served a document request on ATG in which they sought documents pertaining to AIR's role in the design, development, manufacture, distribution, and advertising of RoboCAP products in the United States. (*Id.* ¶ 6.) On June 8, 2020, ATG responded to Plaintiffs' request by producing

---

[1] The parties' respective briefing do not disclose the exact date of the Hogan's communication with Valens. From the information the parties have provided, it appears the communication occurred sometime between the filing of the Complaint in December 2019 and ATG's Answer in February 2020. (Def.'s Opp'n at 6 n.2, ECF No. 53.)

Page 4 – OPINION AND ORDER

eight invoices showing that AIR obtained Accused Products from ATG and shipped them to cannabis companies in the United States. (*Id.* ¶ 7.)

Upon additional inquiry, Plaintiffs learned that AIR was closely intertwined with ATG and that AIR's only corporate officers, Devon Lio and Christopher Sharanewych, also are senior executives in ATG. Plaintiffs also learned that AIR and ATG operated from the same premises in Ontario, Canada, and that one of AIR's corporate officers, Devon Lio, is ATG's Director of Operations and the son of ATG's CEO. (*Id.* ¶¶ 9-10.) Additionally, Sharanewych is the Vice President of Business Development for ATG, and Sharanewych and Devon Lio were college roommates. (*Id.* ¶ 12.)

On May 14, 2020, ATG served a second set of interrogatories in which it asked Plaintiffs to identify each claim in the '989 patent they contended was infringed. (*Id.* ¶¶ 1-3.) Pursuant to the court's scheduling order, the parties exchanged proposed claim terms for construction on May 29, 2020. (Scheduling Order, ECF Nos. 26, 27.) Plaintiffs asserted that the claims in patent '989 be given their plain and ordinary meaning, and that they did not require further construction. (Kniser Decl. ¶ 17.) On June 10, 2020, Plaintiffs responded to ATG's second interrogatory by providing a detailed chart identifying claims 1, 7, 12, 40, 41, 47 and 48, and including analysis of how those claims have been infringed. (*Id.* ¶¶ 3, 18.)

On June 26, 2020, Plaintiffs notified ATG of its intention to add AIR as a defendant and asked whether ATG would consent to amendment, or stipulate that AIR was an agent of ATG. (*Id.* ¶ 13.) ATG responded that they would consent to adding AIR as a defendant only if Plaintiffs would agree to limit the claims against AIR to claim 7, and that it would not consent to the addition of any other patent infringement claims against AIR beyond those already asserted in claim 7. (*Id.* ¶ 14.)

Page 5 – OPINION AND ORDER

On July 13, 2020, the court granted the parties' joint motion for extension of time, set a briefing schedule and hearing on Plaintiffs' motion to amend, and stayed briefing on claim construction. (Order, ECF No. 46.)

On July 17, 2020, Plaintiffs filed their motion to modify the scheduling order and for leave to file an amended complaint. Plaintiffs seek to add AIR as a defendant, include a description of AIR and ATG's relationship, and include a description of AIR's role in selling and importing the same infringing devices as ATG into the United States. Plaintiffs also seek to add additional allegations of direct, indirect, contributory, and willful infringement of multiple claim of the '989 patent, including claims 1, 12, 40, 41, 47, and 48.

That same day, ATG filed a Motion for Judgment on the Pleadings in which they asked the court to declare that Plaintiffs' patent infringement claims, aside from those asserted in claim 7, are invalid and cannot be alleged.

*Discussion*

I. Plaintiffs' Motion to Modify Scheduling Order and Amend Pleadings

    *A.   Legal Standards – Scheduling Order*

When moving for leave to amend after a deadline set by the court has lapsed, the party may not appeal to the liberal pleading requirements of Rule 15. Rather, the party must satisfy the more stringent "good cause" standard set forth in Rule 16. *AmerisourceBergen Corp. v. Dialysist W. Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); FED. R. CIV. P. 16(b)(4) (providing a scheduling order "may be modified only for good cause and with the judge's consent.") Similarly, Local Rule of Civil Procedure ("LR") 16.3 mandates that "objections to any court imposed deadline must be raised by motion and must: (1) Show good cause why the deadlines should be modified[;] (2) Show effective prior use of time; (3) Recommend a new date for the deadline in question [; and]

Page 6 – OPINION AND ORDER

(4) Show the impact of the proposed extension upon other existing deadlines, settings, or schedules." *Barringer v. Clackamas Cty.*, Case No. 3:09-cv-00068-AC, 2012 WL 1574817, *1 (quoting LR 16.3 and *Lyon v. Chase Bank USA, N.A.*, Civ. No. 07-1779-AC, 2009 WL 3047240, at *1 (D. Or. Sept. 22, 2009)).

Determining whether good cause exists to modify a deadline relies primarily upon whether the party seeking amendment acted diligently in pursuing the amendment. *Story v. Midland Funding LLC*, Case No. 3:15-cv-00194-AC, 2016 WL 5868077, at *1 (D. Or. Oct. 7, 2016); *Barringer*, 2012 WL 1574817, at *1; *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (noting Rule 16 scheduling order should be modified only if pretrial deadline "cannot reasonably be met despite the diligence of the party seeking the extension"). If the party who seeks modification of the scheduling order did not act diligently in doing so, "the inquiry should end," and the motion should be denied. *Story*, 2016 WL 5868077, at *1 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (1992)). A party may demonstrate good cause by establishing, among other things, that its "noncompliance with a Rule 16 deadline occurred, . . . notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference[ ] and that [it] was diligent in seeking amendment of the Rule 16 order[ ] once it became apparent that [it] could not comply with the order." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1072-73 (D. Or. 2010) (emphasis added). A party may establish good cause to conform pleadings to critical litigation developments. *Cervantes v. Zimmerman*, Case No. 17-cv-1062-BAS-NLS, 2019 WL 1129154, at *5 (S.D. Cal. Mar. 12, 2019). And, the court may determine whether the movant has shown good cause for each proposed amendment or group of related amendments and need not find good cause on the whole. *Id.*

Page 7 – OPINION AND ORDER

B.   *Legal Standards – Amended Pleadings*

After a responsive pleading has been filed, leave to amend a complaint may occur only by leave of the court or consent of the parties. FED. R. CIV. P. 15(a)(2). Leave to amend is liberally given "when justice so requires." *Id.* "When considering whether to grant leave to amend, a district court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Of the *Foman* factors, prejudice to the opposing party carries the most weight." *Id.* (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)); *accord Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quotation omitted) (providing that under Rule 20, court should "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side").

C.   *Analysis*

1.   Plaintiffs have established good cause under Rule 16(b)(4)

Plaintiffs contend that ATG concealed its relationship with AIR and that but for obtaining the Valens Estimate, it may not have uncovered AIR's role in actively importing the infringing devices into the United States when it did. Plaintiffs assert that they lacked a Rule 11 good faith basis to amend to include AIR's role until it received the invoices demonstrating AIR's role on June 8, 2020. Plaintiffs highlight that they notified ATG of their intent to amend on June 26, 2020, attempted to obtain consent to do so, and despite the impasse over the scope of the amendment, it reached an agreement concerning the briefing schedule.

ATG responds that Plaintiffs should have known about the relationship between ATG and AIR much earlier, and that Plaintiffs have failed to demonstrate good cause under Rule 16(b)(4). ATG argues that its Answer put Plaintiffs on notice of third-party involvement, and that Plaintiffs reasonably should have anticipated needing to add new defendants when the deadlines were set at the February 2020 Rule 16 conference. ATG further argues that Plaintiffs must have known of AIR's role by May 8, 2020 – *before* the deadline for amending pleadings – when they served discovery requests concerning AIR's role, and that their failure to amend earlier demonstrates a lack of diligence, citing *Chao*, 709 F. Supp. 2d at 1073.

In *Chao*, the court denied the plaintiff's motion to modify the scheduling order and denied leave to amend to add additional claimants. *Id.* at 1075. There, the evidence showed that the plaintiff was aware of at least two additional claimants in January 11, 2009, but did not alert the court in a Rule 16 conference on December 10, 2008, or some eight months later at an August 5, 2009 discovery status conference. *Id.* at 1073. The court observed that the plaintiff "knew about the two new claimants before the deadline for filing amended pleadings had passed, yet waited nearly fourteen months before finally filing the motion to amend." *Id.* at 1073. Based on the lack of diligence, the court concluded that the plaintiff failed to show good cause under Rule 16(b)(4). *Id.* at 1074-75.

This case is readily distinguishable from *Chao*. Plaintiffs here did not know of AIR's existence at the February Rule 16 conference. Even if, as ATG contends, Plaintiffs should have suspected that another party was responsible for importing ATG products into the United States based on its Answer, there is no information in the record that Plaintiffs knew the alleged infringing party was AIR at the time of the Rule 16 conference in February. Further, as Plaintiffs highlight, AIR does not have an online presence and its business registration does not identify that it imports

Page 9 – OPINION AND ORDER

the Accused Products into the United States for ATG. Based on this record, it appears that Plaintiffs learned of AIR's potential connection when it received the Valens Estimate in early May 2020, before the deadline to add parties passed, and quickly requested documents from ATG uncover the connection between AIR and ATG. Plaintiffs attest that they did not possess a Rule 11 good faith basis for amendment until they received invoices documenting AIR's role in importing and distributing the Accused Products on June 8, a few days after the deadline to add parties had passed. *Peterson v. Acumed, LLC*, Case No. CV-10-586-HU, 2010 WL 5158542, at *2-3 (D. Or. Dec. 14, 2010) (granting motion to amend under Rule 16 where defendant did not have Rule 11 good faith basis to amend to add defenses until after deposing plaintiff). The court concludes, based on the record, Plaintiffs did not have a Rule 11 good faith basis to add AIR as a defendant until after the deadline to amend the pleadings had passed.

As the court recognized in *Story*, a party generally demonstrates diligence by moving to amend within weeks of learning new information. *Story*, 2016 WL 5868077, at *3. The record here shows that within days of receiving the Valens Estimate, Plaintiffs requested discovery from ATG as to AIR's role in importing and distributing the Accused Products in the United States. The record shows that ATG provided invoices confirming a close relationship between AIR and ATG on June 8, 2020. Eighteen days later, on June 26, 2020, Plaintiffs informed ATG of its intent to amend to add AIR as a defendant and attempted to reach agreement on amending the Complaint to avoid costly and time-consuming motion practice. (Kniser Decl. ¶ 13.) The parties were unable to reach consensus on amendment, and Plaintiffs filed their motion to amend on July 17, 2020. Based on these facts, the court concludes that Plaintiffs have acted diligently upon learning the new information, and thus have shown good cause under Rule 16 to modify the scheduling order.

Page 10 – OPINION AND ORDER

####    2.    Rule 15 supports amendment

Having determined that Plaintiffs have exercised diligence and that good cause exists for modifying the existing deadlines, the court considers whether amending the Complaint under Rule 15 is warranted. *Cervantes*, 2019 WL 1129154, at *3 ("If Rule 16(b) is satisfied, then the court considers the propriety of amendment pursuant to Rule 15(a)."). In doing so, the court examines five factors: (1) unfair prejudice to the opposing party; (2) undue delay; (3) bad faith; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint. *Foman*, 371 U.S. at 182. It is undisputed that Plaintiffs have not previously amended their complaint, and ATG does not assert futility. Accordingly, the court examines only the remaining three factors.

#####        *a.*    *prejudice*

ATG does not appear to contend that it would be unfairly prejudiced by adding AIR as a defendant. Instead, ATG argues that it would be unfairly prejudiced by permitting Plaintiffs to amend to include additional patent claims against it and AIR, and it contends Plaintiffs should be limited in asserting infringement solely claim 7 as asserted in the Complaint. The court disagrees.

"Unfair prejudice to the opposing party is the 'crucial factor' in a district court's decision whether to grant leave to amend." *Adidas Am. v. TRB Acquisitions LLC*, Case No. 3:15-cv-02113-SI, 2016 WL 11673273, at *3 (D. Or. July 26, 2016) (quoting *U.S. v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991)); *Dallas Buyers, LLC v. Integrity Computer Servs.*, Case No. 3:15-cv-00907-AC, 2016 WL 3085907, at *3 (D. Or. Apr. 29, 2016), *adopted* 2016 WL 3085899 (May 31, 2016). For Rule 15 purposes, "unfair prejudice means undue difficulty in prosecuting a lawsuit as a result of a change in tactics or theories on the part of the other party." *Id.* (internal quotation and citation omitted). Moving to amend is not "prejudicial when discovery

Page 11 – OPINION AND ORDER

has not closed, there is no pending trial date, and the case as a whole remains in its early stages." *Dallas Buyers*, 2016 WL 3085907, at *3 (citing *DCD Programs, LTD v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987)).

Discovery in this case is in the early stages, with fact discovery not set to close until November 20, 2020, and the parties have agreed to postpone claim construction. No trial date or pretrial conference have been scheduled. Plaintiffs have asserted additional infringement claims early in the litigation process undermining ATG's contention that it will not have adequate time to address additional patent infringement allegations.

ATG contends that prejudice will result if the court allows Plaintiffs to assert additional claims of the '969 patent, but the contention is unavailing. The allegations in the proposed amended complaint are essentially the same as those alleged in the initial complaint – that ATG (and AIR) are infringing one or more of the of the forty-eight claims in the '989 patent by importing, offering for sale, and selling the Accused Products. *Adidas Am.*, 2016 WL 11673273, at *3 (finding that similarities between original complaint and proposed amended complaint including additional trademark infringement claims were not unfairly prejudicial where five months remained until close of discovery). Plaintiffs pleaded claim 7 as a representative infringement claim, a widely utilized practice in patent infringement cases. *See, e.g., Pure Parlay, LLC v. Stadium Tech. Group, Inc.*, Case No. 2:19-cv-00834-GMN-BNW, 2020 WL 569880, at *2 (D. Nev. Feb. 5, 2020) ("The complaint must allege that each claim limitation of at least one claim has been infringed because 'the failure to practice even a single element is all that separates innovation from infringement . . . .'") (quoting *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-5790-JST, 2016 WL 4427209, at *3 (N.D. Cal. 2016)). *Accord InVue Security Prods. Inc. v. Mobile Tech, Inc.*, 3:19-cv-00407-SI, 2019 WL 5295464, at *2 (D. Or. 2019) ("A complaint

Page 12 – OPINION AND ORDER

need only put the 'potential infringer . . . on notice of what activity . . . is being accused of infringement.'") (quoting *Nalco v. Chem-Mod LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).

Not only has ATG been on notice that potentially more than one claim in the '989 patent is infringing since Plaintiffs filed their original complaint in December 2019, ATG has been aware of the additional specific infringement claims since June 10, 2020, when Plaintiffs answered ATG's May 14, 2020 second set of interrogatories. Plaintiffs' answers identified the specific additional patent claims they assert have been infringed. Accordingly, the court concludes that ATG will no be unfairly prejudiced if Plaintiffs are allowed to amend the complaint to include to AIR and additional infringement claims of the '969 patent.

### b. *undue delay*

Plaintiffs did not unduly delay in moving to amend, as detailed above. Plaintiffs informed ATG of its intent to add AIR within eighteen days of learning of AIR's potential role in U.S. distribution of ATG's products. Plaintiffs moved to amend quickly after their attempts to obtain consent to amend proved unsuccessful. The court concludes that based on this record, Plaintiffs did not unduly delay in seeking amendment. *Adidas Am.*, 2016 WL 11673273, at *4 (one-month delay between learning all relevant facts and seeking amendment did not constitute undue delay).

### c. *bad faith or dilatory motive*

Bad faith exists under Rule 15 when a party intends "to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015). Nothing in the record suggests that Plaintiffs have engaged in dilatory tactics, or are seeking amendment to harass ATG or to force ATG to incur unnecessary expenses. Plaintiffs' motion to amend promotes judicial efficiency because it avoids a separate action against AIR. In that event, complications and delays would arise from reassigning the new case to this court

Page 13 – OPINION AND ORDER

pursuant to this district's local rules and case management plan, resolving any disputes over motions to consolidate the two cases, and realigning in whole or in part two different sets of case management deadlines. Thus, the court concludes that Plaintiffs have not sought amendment in bad faith or for dilatory motives.

In summary, Plaintiffs have satisfied good cause for modifying the scheduling order pursuant to Rule 16. Similarly, amending the complaint will not unduly prejudice ATG, and Plaintiffs did not unduly delay in pursuing amendment and do not seek amendment in bad faith or for dilatory motives under Rule 15. Accordingly, Plaintiffs' motion is granted.

II.  ATG's Motion for Judgment on the Pleadings

    A.  *Legal Standard Rule 12(c)*

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation omitted); *Pit River Tribe v. Bureau of Land Management*, 793 F.3d 1147, 1155 (9th Cir. 2015). In patent cases, a motion to dismiss for failure to state a claim generally raises a "purely procedural question not pertaining to patent law," for which courts apply "the law of the regional circuit." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007); *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013).

    B.  *Legal Standard Rule 12(b)(6)*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must provide "a short and plain statement

Page 14 – OPINION AND ORDER

of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not require detailed factual allegations, but it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must then consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

C.  *Analysis*

ATG contends that Plaintiffs failed to assert infringement of any patent claims, aside from claim 7, until after the pleadings were closed, and that it is therefore entitled to judgment on the pleadings as to any patent claim other than claim 7. ATG argues Plaintiffs are required to specifically identify in the Complaint each patent claim they assert is infringed, and because they failed to so, they now may not assert that claims 1, 12, 40, 41, 47, and 48 of the '989 patent have been infringed. Therefore, ATG argues that it is entitled to judgment on the pleadings as these late-asserted patent claims.

Plaintiffs respond that they meet the *Twombly-Iqbal* standard for at least claim 7 and that ATG does not contend otherwise. Plaintiffs contend they put ATG on notice that its products were infringing one or more claims in patent '989 when they filed their original complaint in December 2019. (Compl. ¶¶ 14, 29.) Plaintiffs also observe that ATG's current arguments are unconvincing because ATG relied on all the claims in the '989 patent, not simply claim 7, in its Answer. (Answer ¶¶ 40, 43.) Plaintiffs also argue that the court should not consider exhibits

Page 15 – OPINION AND ORDER

outside the record when deciding a Rule 12(c) motion, and that if the court does so, the record shows that ATG waited until May 14, 2020 to serve contention interrogatories and thus is not prejudiced by any alleged late-asserted patent claims.

Courts within the Ninth Circuit frequently find that adequate pleading of one representative claim per patent is sufficient to withstand a Rule 12(b)(6) challenge. "[I]n order to properly plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim." *Scripps Research Inst. v. Illumina, Inc.*, No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) (citing cases). "Plaintiff must simply provide sufficient factual allegations concerning how each limitation of the asserted claims is plausibly met by the accused products." *Id.* "The complaint must allege that each claim limitation of at least one claim has been infringed because 'the failure to practice even a single element is all that separates innovation from infringement[.]'" *Pure Parlay*, 2020 WL 569880, at *2 (quoting *e.Digital Corp.*, 2016 WL 4427209, at *3). The *Pure Parlay* court noted that for an infringement claim to be plausible, "the complaint must provide factual content indicating that the accused product infringes each limitation of at least one claim of the patent in suit." *Id.* (citing *North Star Innovations v. Kingston Tech. Co.*, No. 17-01833-DOC, 2018 U.S. Dist. LEXIS 106018 at *6 (C.D. Cal. June 19, 2018)); *accord Preservation Technologies LLC v. MindGeek USA Inc.*, 2019 WL 3213585, at *3 (C.D. Cal. Apr. 2, 2019) (denying motion to dismiss infringement claim and that "[t]he Court need not march through each patent to demonstrate the existence of sufficient factual assertions" where the plaintiff had alleged every element of at least one claim of the asserted patents). "The necessary factual allegations a plaintiff must plead may qualitatively vary with the complexity of the patent in suit." *Pure*

*Parlay*, 2020 WL 569880, at *2 (citing *Disc Disease Sols. Inc. v. VGH Sols. Inc.*, 888 F.3d 1256 (Fed. Cir. 2018)).

Here, it is clear that the allegations in the Complaint with respect to claim 7 are satisfactory under *Twombly* and *Iqbal*. ATG's decision to not move to dismiss the Complaint on claim 7 is an implicit acknowledgment of this observation. Rather, ATG argues that it is entitled to judgment on the pleadings on all claims other than Claim 7 because Plaintiffs did not move to amend their Complaint to specifically include the additional claims prior to the deadline. Thus, ATG's Rule 12(c) motion seeks to prevent Plaintiffs from asserting new infringement claims in their proposed amended complaint against both ATG and non-party AIR.

The cases ATG cites do not support the use of Rule 12(c) ATG seeks to employ here. For example, in *Jenkins v. LogicMark, LLC*, Case No. 3:17-cv-HEH, 2017 WL 376154, at *3 (E.D. Va. Jan. 25, 2017), the defendants challenged that the sufficiency of the complaint as a whole, and the *Jenkins* court noted that "Plaintiff does little more than recite the elements of direct infringement . . . in alleging that LogicMark's products somehow infringe his four patents." *Id.* Similarly, in *Asghari-Kamrani v. USAA*, Case No. 2:15cv478, 2016 WL 1253533, at *3 (E.D. Va. Mar. 22, 2016), the defendant challenged the sufficiency of the complaint in several respects. The court found that the plaintiffs failed to specify what features of the USAA website corresponded to the plaintiffs' claims in the patent, and that plaintiffs failed to identify with particularity how the infringing features of USAA's website infringed claim 1 of the patent. *Id.* at *4. While the *Asghari-Kamrani* court also noted that plaintiffs pleaded only claim 1 with particularity despite asserting other patent claims were infringed in the complaint, and that "[p]laintiffs must detail how each claim is infringed," it was clear that in USAA's Rule 12 motion, it was challenging the sufficiency of the complaint as a whole as it was then pleaded. *Id.* at *4.

Page 17 – OPINION AND ORDER

None of the cases ATG cites are particularly helpful to addressing the specific question before the court: whether a party may affirmatively use Rule 12(c) to prospectively limit patent infringement claims that have not yet been asserted against a third party that has not yet been formally included in the action. On that question, the answer is undoubtedly "no." The court acknowledges that some courts have permitted a Rule 12(c) motion to "parse claims for relief or strike less than an entire count" and that "the case law is not extensive." *Holloway v. Best Buy Co.*, No. C 05-5056 PJH, 2009 WL 1533668, at *2-3 (N.D. Cal. May 28, 2009); *Palzer v. Cox Ok. Telecom, LLC*, Case No. 15-cv-00564-GKF-JFJ, 2018 WL 3240961, at *3-4 (N.D. Okla. July 3, 2018). The *Holloway* and *Palzer* courts found it appropriate to address the Rule 12(c) motions because the claims appeared untimely. Unlike *Holloway* and *Plazer,* here the court discerns no value in entertaining this partial motion for judgment on the pleadings. ATG does not challenge the sufficiency of the current infringement allegations in the Complaint. And, as decided above, Plaintiffs are entitled to amend to include AIR as a defendant. ATG's attempt to use Rule 12(c) to somehow curtail what allegations of infringement may be asserted against AIR is not well-taken. *See Erhart v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046, 1063 (S.D. Cal. Apr. 30, 2019) (denying Rule 12(c) motion seeking to dispose of parts of plaintiff's whistleblower claims where plaintiff pleaded plausible whistleblower cause of action); *Kenall Manf. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 893-894 (N.D. Ill. Dec. 10, 2018) (holding that Rule 12(c) did not permit partial judgment on patent infringement pleadings as to liability and not damages because the rule "does not explicitly authorize courts to carve up claims or defenses on a motion for judgment on the pleadings"). Accordingly, ATG's motion for partial judgment on the pleadings is denied.

\ \ \ \ \

\ \ \ \ \

*Conclusion*

Based on the foregoing, Plaintiffs' Motion to Modify the Scheduling Order and For Leave to File and Amended Complaint (ECF No. 48) is GRANTED, and Defendant ATG's Motion for Judgment on the Pleadings (ECF No. 47) is DENIED. Plaintiffs shall file the proposed amended complaint within ten (10) calendar days of the date this order is entered in the docket.

IT IS SO ORDERED.

DATED this 10th day of September, 2020.

JOHN V. ACOSTA
United States Magistrate Judge